UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                      Case Number 10-20642
v.                                                  Honorable David M. Lawson

BENNIE LAMONT EASLEY,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION
## TO DETERMINE THE APPLICABILITY OF THE FAIR SENTENCING ACT

    This matter is before the Court on the defendant's motion to determine whether the Fair Sentencing Act (FSA) applies to this case. The FSA became law on August 3, 2010 and amended the Controlled Substances Act by increasing the quantity of crack cocaine necessary to trigger certain mandatory minimum sentences. Defendant Easley was indicted on November 2, 2010 for, among other things, possession with intent to distribute approximately 12 grams of cocaine base (crack). The offense conduct is alleged to have occurred on March 23, 2010.

    Under the law in effect at the time of the offense conduct, Easley's violation would have exposed him to a prison sentence of at least 5 and up to 40 years. 21 U.S.C. § 841(b)(1)(B)(iii) (2008). The FSA increased the trigger amount for the 5-to-40-year sentence to 28 grams of crack. *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2010). Possessing with intent to distribute lesser amounts of crack — including the twelve grams Easley is accused of intending to distribute — now carries a maximum sentence of 20 years with no minimum sentence. *See* 21 U.S.C. § 841(b)(1)(C) (2010). Easley says that he is unsure whether he may want to negotiate a guilty plea agreement in the case, but he argues that if convicted he should benefit from the FSA's leniency because he was indicted

after the Act took effect, even though his alleged conduct predated the amendment. The government maintains that under the general savings statute, 1 U.S.C. § 109, the Court must apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application, which the FSA does not.

The Court heard arguments from the parties in open court on February 16, 2011. The parties were given leave to file supplemental briefs, which they did, and the matter is ready for decision.

I.

The question presented has been addressed by dozens of other courts, with mixed results. At last count, 25 district courts have held that a defendant who committed his drug crime before the effective date of the FSA is subject to the old penalties, even if his indictment or conviction (and thus his sentence) comes after the FSA became law. *United States v. Maybell*, No. 08-30235, 2011 WL 1561055 (S.D. Ill. Apr. 26, 2011); *United States v. John*, No. 2010-35, 2011 WL 1515737 (D.V.I. Apr. 20, 2011); *United States v. Douglas*, No. 10-945, 2011 WL 1225666 (D.S.C. Mar. 31, 2011); *United States v. Young*, No. 10-20148, 2011 WL 1042264 (E.D. Mich. Mar. 18, 2011); *United States v. Davis*, --- F. Supp. 2d ---, 2011 WL 938363 (N.D. Iowa 2011); *United States v. Nash*, No. 10-20320, 2011 WL 891148 (E.D. Mich. Mar. 11, 2011); *United States v. Wright*, No. 10-20185, 2011 WL 806219 (E.D. Mich. Mar. 2, 2011); *United States v. Peterson*, --- F. Supp. 2d ---, 2011 WL 797317 (D.N.D. 2011); *United States v. Reddick*, No. 10-20064, 2011 WL 768306 (E.D. Mich. Feb. 28, 2011); *United States v. Campbell*, --- F. Supp. 2d ---, 2011 WL 758868 (E.D. Tenn. 2011); *United States v. Gadson*, No. 08-248, 2011 WL 542433 (W.D. Pa. Feb. 8, 2011); *United States v. Wilks*, No. 10-30134, 2011 WL 499949 (S.D. Ill. Feb. 4, 2011); *United States v. Franklin*, No. 10-20467, 2011 WL 346085 (E.D. Mich. Feb. 3, 2011); *United States v. Santana*, ---

F. Supp. 2d. ---, 2011 WL 260744 (S.D.N.Y. Jan. 20, 2011); *United States v. Bagent*, No. 10-036, 2011 WL 39830 (E.D. La. Jan. 4, 2011); *United States v. Johnson*, No. 09-373, 2011 WL 39090 (E.D. La. Jan. 4, 2011); *United States v. Dickey*, --- F. Supp. 2d ---, 2011 WL 49585 (W.D. Pa. Jan. 4, 2011); *United States v. Davis*, No. 10-036, 2011 WL 39094 (E.D. La. Jan. 3, 2011); *United States v. Patterson*, No. 10-94, 2010 WL 5480838 (S.D.N.Y. Dec. 30, 2010); *United States v. Burgess*, No 09-150, 2010 WL 5437265 (W.D. Pa. Dec. 27, 2010); *United States v. Jesus-Nunez*, No. 10-017, 2010 WL 5422604 (M.D. Pa. Dec. 27, 2010); *United States v. Lightfoot*, No. 10-42, 2010 WL 5300890 (E.D. Va. Dec. 22, 2010); *United States v. Crews*, --- F. Supp. 2d ---, 2010 WL 5178017, No. 06-418 (W.D. Pa. Dec. 20, 2010); *United States v. Tejeda*, --- F. Supp. 2d ---, 2010 WL 4967977 (S.D.N.Y. Dec. 2, 2010); *United States v. Holmes*, No. 10-110, 2010 WL 4961657 (E.D. Va. Dec. 1, 2010).

Forty-one district courts have held the opposite: a conviction that occurs after the FSA was enacted invokes the new penalties prescribed in that legislation, even if the offense conduct occurred beforehand. *United States v. Watts*, --- F. Supp. 2d ---, 2011 WL 1282542 (D. Mass. 2011); *United States v. Harris*, No. 09-226, 2011 WL 1134983 (D. Minn. Mar. 25, 2011); *United States v. Beach*, No. 09-10132, 2011 WL 977766 (D. Kan. Mar. 17, 2011); *United States v. Holloman*, --- F. Supp. 2d ---, 2011 WL 607121 (C.D. Ill. 2011); *United States v. Hodges*, --- F. Supp. 2d ---, 2011 WL 611804 (M.D. Ga. 2011); *United States v. McKenzie*, No. 10-00079 (E.D. Wash. Feb. 9, 2011); *United States v. White*, No. 10-00247, 2011 WL 587100 (D.S.C. Feb. 9, 2011); *United States v. Jackson*, No. 10-20 (N.D. Fla. Feb. 7, 2011); *United States v. Scott*, No. 09-160 (M.D. Fla. Feb 4, 2011); *United States v. Rolle*, No. 09-103 (M.D. Fla. Feb. 4, 2011); *United States v. Robinson*, --- F. Supp. 2d ---, 2011 WL 379536 (E.D. Tenn. 2011); *United States v. Mayfield*, No. 10-390, 2011

-3-

WL 344108 (D. Neb. Feb. 1, 2011); *United States v. Byars*, No. 10-50, 2011 WL 344603 (D. Neb. Feb. 1, 2011); *United States v. Elder*, No. 10-132, 2011 WL 294507 (N.D. Ga. Jan. 27, 2011); *United States v. Francis*, No. 08-271 (M.D. Fla. Jan. 26, 2011); *United States v. Duncan*, No. 10-0089 (E.D. Wash. Jan. 26, 2011); *United States v. Cox*, No. 10-85, 2011 WL 92071 (W.D. Wis. Jan. 11, 2011); *United States v. Holland*, No. 10-48, 2011 WL 98313 (D. Neb. Jan. 10, 2011); *United States v. Vreen*, No. 10-119 (M.D. Fla. Jan. 10, 2011); *United States v. Green*, No. 08-270 (M.D. Fla. Jan. 7, 2011); *United States v. Johnson*, No. 08-270 (M.D. Fla. Jan. 4, 2011); *United States v. Jones*, No. 10-233 (N.D. Ohio Jan. 3, 2011); *United States v. English*, --- F. Supp. 2d ---, 2010 WL 5397288 (S.D. Iowa 2010); *United States v. Parks*, No. 10-225, 2010 WL 5463743 (D. Neb. Dec. 28, 2010); *United States v. Curl*, No. 09-734 (C.D. Cal. Dec. 22, 2010); *United States v. Whitfield*, No. 10-13, 2010 WL 5387701 (N.D. Miss. Dec. 21, 2010); *United States v. Holloway*, No. 04-0090 (S.D. W. Va.. Dec. 20, 2010); *United States v. Gutierrez*, No. 06-40043 (D. Mass. Dec. 17, 2010); *United States v. Ross*, --- F. Supp. 2d ---, 2010 WL 5168794 (S.D. Fla. 2010); *United States v. Johnson*, No. 10-138 (E.D. Va.. Dec. 7, 2010); *United States v. Gillam*, --- F. Supp. 2d ---, 2010 WL 4906283 (W.D. Mich. 2010); *United States v. Spencer*, No. 09-400 (N.D. Cal. Nov. 30, 2010); *United States v. Jaimespimentz*, No. 09-488 (E.D. Pa. Nov. 24, 2010); *United States v. Favors*, No. 10-00384 (W.D. Tex. Nov. 23, 2010); *United States v. Carter*, No. 08-299 (N.D.N.Y. Nov. 22, 2010); *United States v. Roscoe*, No. 10-126 (W.D. Mich. Nov. 15, 2010); *United States v. Garcia*, No. 09-1054 (S.D.N.Y. Nov. 15, 2010); *United States v. Shelby*, No. 09-00379 (E.D. La. Nov. 10, 2010); *United States v. Angelo*, No. 10-10004 (D. Mass. Oct. 29, 2010); *United States v. Douglas*, 746 F. Supp. 2d 220 (D. Me. 2010); *United States v. Dixson*, No. 08-00360 (M.D. Fla. Aug. 24, 2010).

Most of the appellate cases dealing with the FSA's application involve defendants who were sentenced before the enactment date and raised the issue of the Act's retroactive effect on direct appeal, although two recent cases address sentences imposed after August 4, 2010, both concluding that the respective defendants do not reap the benefits of the FSA. *United States v. Fisher*, 635 F.3d 336 (7th Cir. 2011); *United States v. Acoff*, 634 F.3d 200, 201 (2d Cir. 2011).

The cases that most clearly illuminate the competing views in the discussion are *United States v. Douglas*, 746 F. Supp. 2d 220 (D. Me. 2010), which held that Congress by "necessary implication" intended the FSA to apply to sentences imposed after the Act's effective date, and *United States v. Santana*, --- F. Supp. 2d ---, 2011 WL 260744 (S.D.N.Y. Jan. 20, 2011), which concluded that the FSA does not include language indicating that Congress intended to override the general savings statute, 1 U.S.C. § 109, which states that repeal of a criminal statute "shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide . . . ." Both of these cases deal with the arguments raised by the parties in the present case.

The arguments shape up this way. As a general rule, a court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974). The "statutory direction" in the case of a repealed or modified criminal statute is found in the general savings statute referenced above, 1 U.S.C. § 109. The Supreme Court has explained that the general savings statute was enacted in 1871 to remediate "the interplay of the Constitution's *ex post facto* clauses" and the common law rule that the repeal or re-enactment with

different penalties of a criminal statute "abated all prosecutions which had not reached final disposition in the highest court authorized to review them." *Santana*, 2011 WL 260744, at *8 (quoting Comment, *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, 121 U. Pa. L. Rev. 120, 124 (1972), and *Bradley v. United States*, 410 U.S. 605, 607-08 (1973)). Commentators have observed that the purpose of the general savings statute was not to deprive criminal defendants of the benefits of ameliorative criminal legislation. Rather, it was to remedy the problem that when criminal statutes were amended or re-enacted without a savings clause, "conviction under the old statute was prohibited under the abatement doctrine, while conviction under the new statute, if it increased punishment, was barred by the *ex post facto* clauses." *Ibid.* (citing Comment, *Today's Law*, 121 U. Pa. L. Rev. at 124-25).

>The text of the general savings statute states:
>
>The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. . . .

1 U.S.C. § 109. The Supreme Court has held that this statute establishes the default rule preserving liability under repealed laws, and it "must be enforced unless, *either by express declaration or necessary implication, arising from the terms of the law as a whole*, it results that the legislative mind will be set at naught by giving effect to [the Saving Statute]." *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908) (emphasis added).

The Sixth Circuit has applied the savings statute to validate a sentence of a defendant who committed a crime at the time harsher penalties were in effect but who was sentenced under the old regime after Congress reduced the criminal penalties. *United States v. Hughes*, 369 F.3d 941,

944-45 (6th Cir. 2004), *vacated on other grounds by* 543 U.S. 1108 (2005) ("We hold that the penalty provision of 18 U.S.C. § 641 in effect at the time Hughes committed the underlying theft is saved from release or extinguishment by 1 U.S.C. § 109. The district court properly rejected Hughes's attempt to take advantage of an ameliorative criminal sentencing law that decreased the penalty for the theft of government property whose value is greater than $100, but not more than $1,000."). And in the case of the FSA, the Sixth Circuit has held that the Act does not apply retroactively to a defendant who already had been sentenced when the new law took effect, finding that there was "no express statement that it is retroactive." *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). The pivot point of the arguments in the several cases decided so far has been whether Congress's intent to apply the FSA to defendants yet to be sentenced can be divined by "necessary implication" considering "the terms of the law as a whole." *Great N. Ry. Co.*, 208 U.S. at 465.

In *United States v. Douglas*, 746 F. Supp. 2d 220 (D. Me. 2010), Judge Brock Hornby concluded that several aspects of the FSA necessarily imply that Congress intended the new penalties to apply immediately to cases awaiting sentence, even where the offense conduct predated the Act. He observed that the FSA does *not* contain its own savings provision. Instead, the statute contains an express grant of emergency authority to the Sentencing Commission to change the applicable sentencing guidelines for drug offenses. *Id.* at 228. Those guideline amendments incorporated the mandatory minimum sentences prescribed by the FSA, which are effective immediately. And "[w]hat is more, for years the Sentencing Reform Act of 1984 has directed expressly that the governing Guidelines are those in effect on the day a defendant is sentenced," *id.* at 229, even if the offense conduct occurred when harsher guidelines were in effect. He found that

"Congress's action here concerning when the restoration of fairer sentencing is to occur . . . is certainly a 'fair implication,' and a 'necessary implication' of what Congress has done." *Id.* at 230. He wrapped up his reasoning as follows:

> I conclude, based upon the context of the Act, its title, its preamble, the emergency authority afforded to the Commission, and the Sentencing Reform Act of 1984, that Congress did not want federal judges to continue to impose harsher mandatory sentences after enactment merely because the criminal conduct occurred before enactment.

*Id.* at 231.

The Court finds this reasoning compelling but not controlling. As all of the other judges addressing the issue in this district have found so far, the Sixth Circuit's decision in *United States v. Carradine* forecloses an interpretation of the FSA that permits an avoidance of the general savings statute. *See Young*, 2011 WL 1042264 (Cleland, J.); *Nash*, 2011 WL 891148 (Cleland, J.); *Wright*, 2011 WL 806219 (Ludington, J.); *Reddick*, 2011 WL 768306 (Cook, J.); *Franklin*, 2011 WL 346085 (Ludington, J.). In *Carradine*, a defendant on direct appeal argued that the FSA's lower penalties should apply to his case, even though his sentence pre-dated the FSA's enactment. In rejecting that argument, the court held:

> The "general savings statute," 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application.
> The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time Carradine committed the crime in question.

*Carradine*, 621 F.3d at 580 (citations omitted). The opinion contains no analysis or discussion of the competing arguments, but this Court can find no principled basis to distinguish the court of appeals's holding from the present case. True, Easley has not been sentenced; he has not even been

-8-

convicted. But the Sixth Circuit's statements that no retroactivity can be inferred from the FSA's "plain language," and that the court "must apply the penalty provision in place at the time [the defendant] committed the crime in question," do not permit a departure from the holding on the basis of when the sentencing date may occur in this case. *See United States v. Greer*, No. 07-3687, 2011 WL 693231, at *4 (6th Cir. 2011) (unpublished) (noting that *Carradine* left little for it to decide: defendants "convicted for actions that took place before the FSA came into effect . . . do not reap the benefits of the FSA"). As occasionally occurs, the Court must obey precedent at the expense of a better-reasoned decision.

## II.

There is another reason the Court cannot grant the defendant's motion and declare that the FSA's penalties will govern his sentence. Easley has not been convicted. He has not even expressed an intention to enter a guilty plea. Even if the Court were to decide that the FSA would apply to a sentence in his case, Easley might not plead guilty, and then go to trial and receive an acquittal. Or, although charged with possession of 12 grams of cocaine base, Easley may be convicted of possession with intent to distribute a lesser amount of cocaine base that would not subject him to a statutory minimum sentence even under pre-FSA law. Under these circumstances, the Court's decision on whether the FSA applies in this case is advisory because the question is not yet ripe. "Article III of the Constitution limits the jurisdiction of federal courts to consideration of actual cases and controversies, and federal courts are not permitted to render advisory opinions." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (citing *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987)).

In deciding whether a claim is ripe, courts consider two questions: "(1) is the claim 'fit[] . . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding court consideration'?" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)); *see also Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533, 537 (6th Cir. 2010); *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (describing the first question as two separate questions). The Sixth Circuit has explained that "'a claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all."'" *Cooley v. Granholm*, 291 F.3d 880, 883-84 (6th Cir. 2002) (quoting *Texas v. United States*, 523 U.S. 296 (1998)). "As a rule, we do not allow litigation on premature claims to ensure that courts litigate 'only existing, substantial controversies, not hypothetical questions or possibilities.'" *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 581-82 (6th Cir. 2008) (quoting *City Commc'ns, Inc. v. City of Detroit*, 888 F.2d 1081, 1089 (6th Cir. 1989)).

Most of the cases addressing the question of the FSA's applicability did so following a conviction. Of the cases dealing with the issue pre-conviction, only the *Santana* court wrestled with the ripeness problem. That court noted, "[d]efendants who have *not* yet been convicted of an any offense, whether their sentences will ultimately be affected by the applicability of the FSA depends on a number of 'contingent future events' that might not occur." *Santana*, --- F. Supp. 2d at ---, 2011 WL 260744, at *6. That court acknowledged that a defendant considering a guilty plea is entitled to know what he might be facing as a penalty, *ibid.*, and Federal Rule of Criminal Procedure 11 requires the Court to advise the defendant before accepting a plea of "any mandatory minimum

penalty," Fed. R. Crim. P. 11(b)(1)(I). The *Santana* court resolved the ripeness conundrum by concluding that because one of the defendants represented that he would plead guilty if the court found the FSA applicable in his case, he was "in essentially the same position as the Defendants who have pled guilty and who await sentencing." *Santana*, 2011 WL 260744, at *7.

As noted earlier, Easley has not reached that stage of proceeding in his case yet. He has been indicted and arraigned, but there is no provision in the Federal Rules of Criminal Procedure or constitutional doctrine that requires that he be informed with certainty of the potential penalties for the charged offenses up to this point in the case. Under the Constitution, there are but two requirements for an indictment: "'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010). Under the rules of procedure, the indictment must describe the offense and contain the statutory citation. Fed. R. Crim. P. 7(c)(1). There is no requirement that the indictment recite the penalties for the charged offenses. At arraignment, Easly was entitled to be told that he has certain rights and what the indictment says. Fed. R. Crim. P. 5(d)(1), 10(a). There is no requirement that the court inform the defendant of the potential penalties until he offers a guilty or no contest plea. *See* Fed. R. Crim. P. 11(b)(1)(H)-(I).

If Easley does offer to plead guilty, the Court must *accurately* advise him of the potential maximum and mandatory minimum sentence. Understating *or overstating* the potential penalty can invalidate a guilty plea. *United States v. Mitchell*, 398 F. App'x 159, 162 (6th Cir. 2010) ("[W]here

. . . a district court overstates the maximum potential sentence to which a defendant may be subject, the misinformation may deprive the defendant of an understanding of the actual consequences he faces and the true nature of the options available to him, thereby making his plea unintelligent."). However, until a conviction is looming, issues relating to the potential penalties do not "concern[] a dispute that is likely to come to pass." *Warshak*, 532 F.3d at 525. Nor would a "hardship," *ibid.*, result from withholding a decision on the present motion. Should Easley decide to plead guilty, the Court will inform him of the mandatory minimum and maximum sentence that he faces if found guilty. He is free to change his mind once presented with that information.

It is true that "a court may accept a guilty or no-contest plea only where it is a 'voluntary[,] . . . knowing, intelligent act [ ] done with sufficient awareness of the relevant circumstances and likely consequences.'" *Fautenberry v. Mitchell*, 515 F.3d 614, 636-37 (6th Cir. 2008) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). It also is beyond debate that the defendant "must be apprised of the direct consequences of entering the plea," *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991) (citing *Brady*, 397 U.S. at 755), including "the maximum sentence that could be imposed," *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994) (citing *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991)), and "any mandatory minimum sentences, which may impact the defendant's decision to plead guilty," *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004). However, until the defendant offers to change his plea or is convicted, the question of the FSA's applicability is not ripe for adjudication.

### III.

The Sixth Circuit has left little room for adoption of the reasoning represented by the decision in *United States v. Douglas*, 746 F. Supp. 2d 220 (D. Me. 2010), concerning the application

of the FSA to offense conduct that predated the effective date of that legislation, even where the indictment, conviction, and sentence post-date the enactment of the FSA. However, the Court cannot make a definitive ruling on the defendant's motion because the question presented is not ripe for adjudication.

Accordingly, it is **ORDERED** that the defendant's motion to determine the applicability of the Fair Sentencing Act in this case [dkt. #14] is **DENIED**.

It is further **ORDERED** that the final pretrial conference is rescheduled for **May 16, 2011 at 1:30 p.m.**; if the defendant intends to plead guilty under a plea agreement, the plea agreement must be signed on or before **May 13, 2010**; and the trial will commence on **May 23, 2011, at 8:30 a.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: May 6, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 6, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL